Syllabus.

## Richmond.

### John R. Lynch v. William J. Highfield.

February 25, 1926.

1. Stock and Stockholders—*Sale of Stock—Consideration—Case at Bar.*—In the instant case, an action on a contract for the sale of stock, the plaintiff had testified to an actual offer made him by the defendant, whereby the defendant was to purchase the stock upon specified terms as soon as it came into the possession of the plaintiff, in event the plaintiff accepted the proposition of the exchange of his bonds in an old corporation for the stock in question in the new corporation. Plaintiff testified that he had obtained the stock before the offer was withdrawn and tendered it to defendant and contended that defendant's offer and plaintiff's acceptance constituted a contract between the parties.

   *Held:* That an instruction which told the jury that there was no consideration for the contract sued upon if the plaintiff had determined to and did accept the stock in the company before the date of the alleged agreement by defendant to purchase the stock, was erroneous as not justified by the evidence.

2. Sales—*Contracts—Offer and Acceptance.*—It is fundamental that an offer to give a certain price for personal property, and left open for acceptance, becomes a contract binding upon the offerer, although no obligation exists to perform the conditions of the offer and to accept. No concluding agreement arises until the terms of the offer are complied with and the offer is accepted. When the terms of the offer are complied with and acceptance made, then a contract ensues resting upon a consideration sufficient to make the promise of the offerer enforceable.

3. Stock and Stockholders—*Sale of Stock—Measure of Damages for Breach of Contract by Buyer where Title Never Passed.*—Where a declaration alleged an agreement to purchase stock, a tender of the stock and the refusal of the buyer to accept the stock, the action is plainly an action for damages for breach of a contract of sale; and as the title of the stock never passed to the defendant, the alleged purchaser, the damages to the plaintiff would be the difference between the contract price and the value of the stock at the time the defendant refused to accept and pay for it.

4. Sales—*Consideration—Instruction not Supported by the Pleadings—Case*

*at Bar.*—In the instant case, an action to recover the purchase price of stock, the court refused to instruct the jury that if they believed that plaintiff agreed to sell and defendant agreed to buy certain shares of stock, they should find for plaintiff. It was contended that this instruction was not justified under the pleadings, as the declaration in assumpsit contained a special count alleging that the plaintiff was persuaded by the defendant to accept the stock in question in lieu of a bond by reason of his promising to take the stock and pay for it.

*Held:* That as the declaration contained the common counts in assumpsit, fairly construed, it should be taken to set up a contract resulting from a conditional offer and acceptance whereby the defendant agreed to buy the stock as soon as it was issued.

5. SALES—*Action by Seller Against Buyer for Breach of Contract for Sale of Stock—Instructions—Case at Bar.*—In the instant case, an action to recover the purchase price of stock, the court refused an instruction offered by plaintiff that if the jury believed that the plaintiff agreed to sell to defendant ten shares of stock in a corporation as soon as the plaintiff received the certificate for it, and if they believed that defendant had agreed to accept the shares and to pay for them upon the receipt of the certificate, they should find for the plaintiff. The declaration alleged that it was endeavored to be shown by the proof that plaintiff secured the stock in reliance on defendant's promise.

*Held:* That the instruction was objectionable in that it did not conform to the character of the agreement of purchase alleged in the declaration and endeavored to be supported by proof.

6. SALES—*Action by Seller Against Buyer for Breach of Contract for Sale of Stock—Instructions—Case at Bar.*—In an action for the purchase price of stock, the court instructed the jury that if they believed from the evidence that defendant promised plaintiff that if plaintiff would accept stock in a corporation in lieu of a cash settlement for his bond, defendant would dispose of the stock as soon as his salesman began selling the stock, and allow plaintiff par for the same, and that the stock was not salable, they should find for defendant.

*Held:* Error, as the evidence did not show any such agreement. There was no testimony as to defendant allowing plaintiff "par for the same" as stated in the instruction.

7. SALES—*Action by Seller Against Buyer—Conflict in the Evidence—Questions for the Jury—Case at Bar.*—In the instant case, an action by the seller for an alleged breach of a contract for the sale of stock, the evidence showed very little reason why defendant should have made the alleged contract, and defendant denied having made it; but there was distinct testimony on the part of the plaintiff that such an agreement was made, and the question therefore was entirely for the jury.

Error to a judgment of the Circuit Court of Accomac county, in an action of assumpsit.    Judgment for defendant.    Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Mapp & Mapp, Herbert Barnes*, for the plaintiff in error.

*Benjamin T. Gunter*, for the defendant in error.

CRUMP, P., delivered the opinion of the court.

John R. Lynch, the plaintiff in error, was the plaintiff in the circuit court in an action of assumpsit brought by him against the defendant in error, W. J. Highfield, as defendant.    The declaration contained all of the common counts in assumpsit, based upon the sum of $1,000 as the price and value, etc., according to the varying common counts.    The declaration, in addition, contained the following special count:    "And for this, also, that heretofore, to-wit, on the 20th day of July, 1923, in said Accomac county, Virginia, the said defendant bargained for and bought of the plaintiff ten shares of the common capital stock of the Assateague Fish Oil and Fertilizer Company, Inc., of the par value of $100.00 per share, total $1,000.00, which stock then plaintiff was persuaded and induced by the defendant to accept in lieu of a cash settlement of his bonds for $1,000.00 in the Chincoteague Fish Oil and Guano Company, Inc. (of which latter company the Assateague Fish Oil and Fertilizer Company, Inc., named above, was a reorganization and successor, having at the receiver's sale purchased practically all the assets of the old company), the defendant then and

there directing and authorizing the plaintiff to decline to accept the cash settlement offered for plaintiff's bonds in the old company, and instructing the plaintiff to accept only the equivalent of stock in the new company for plaintiff's bonds in the old company, on the promise of the defendant that as soon as the stock was issued in the new company and delivered to the plaintiff that if the plaintiff would draft on him through the Industrial Trust Company, of Wilmington, Delaware, for one thousand dollars with said stock attached, he would pay said draft and take said stock at one thousand dollars; and in consideration thereof and relying on the promises of the defendant, the said plaintiff declined the cash offer of settlement for his bonds in the said Chincoteague Fish Oil and Guano Company, but elected to accept the par value of his bonds in the old company in stock in the new company, to-wit:   The Assateague Fish Oil and Fertilizer Company, which stock, being certificate No. 59 for ten shares, was issued to him on or about August 23, 1923, and that upon delivery of said stock to said plaintiff on or about August 27, 1923, as theretofore directed by the defendant, he drafted on him the said defendant, with said stock certificate attached through the Industrial Trust Company, of Wilmington, Delaware, for the face value of said stock, to-wit, one thousand dollars ($1,000.00) of all of which the said defendant had due notice."
The defendant put in a plea of the general issue, *i. e.,* non-assumpsit, and filed the following grounds of defense:

"(1) Non-assumpsit.

"(2) The defendant denies absolutely that he bought of the plaintiff ten shares of common capital stock of the Assateague Fish Oil and Fertilizer Company, Inc., and further denies that he persuaded and induced the

plaintiff to accept said stock in lieu of a cash settlement of his bonds for $1,000.00, in the Chincoteague Fish Oil and Guano Company, Inc., on the 20th day of July, 1923, as alleged in the special count in the declaration contained, and asserts and declares that said stock was purchased by the plaintiff in accordance with an agreement made and entered into on the 12th day of July, 1923.

"(3) The defendant specifically denies that he ever authorized the said plaintiff to draft on him at the Industrial Trust Company, Wilmington, Delaware, in the amount of $1,000.00, in payment of said stock, or for any other amount."

Upon the trial, and under the instructions of the court, the jury found a verdict for the defendant, and thereupon the plaintiff brought this writ of error.

The plaintiff testified that on the 20th of July, 1923, the defendant, Highfield, was in conversation with him at Franklin City. In this testimony he gives in evidence in chief his version of defendant's offer as follows: "He came down in an automobile, and we got to talking about different things and I asked Mr. Highfield what he would give me for my bonds, and he said: 'What will you take, Lynch?' and I says: 'I want all I can get; you see what my work is, it is monthly salary, with a big family and I just had a son to get out of the hospital and need the money;' he says: 'In lieu of—our people has agreed to give $1,000.00 worth of stock of the new concern for a $1,000.00 bond of the old concern,' he says: 'You accept your stock and' he says: 'On receipt of same you draft on me at the Industrial Trust Company, at Wilmington, Delaware, and I will accept same;' he says: 'You must keep that under your hat, that is between you and I, and it will be $1,000.00 to you and amount to $1,200.00 for me." In answer to an in-

quiry from the court he stated: "I asked Mr. High-
field what he would pay me—give me for my bonds.
He says: 'What will you take, Lynch?' I says: 'I want
all I can get;' I says: 'I am only a monthly man and I
have a large family and just have a boy out of the
hospital and need ready cash;' he says: 'Well, our
people has agreed to give stock for their bonds,' he says:
'You accept the stock, which is $1,000.00 for your
bonds,' he says: 'And that will be $1,000.00 to you and
it will mean $1,200.00 to me." Again on cross-ex-
amination the plaintiff answered as follows:

"Q. Mr. Lynch, now repeat again—I have not asked
you on cross examination—just exactly what was Mr.
Highfield's declaration to you?

"A. Mr. Highfield was at Franklin City en route to
the factory. While waiting for the supply boat to
come for him, we were talking out on the platform.
I asked Mr. Highfield about different things about the
plant and I asked Mr. Highfield what he would give me
for my bonds—I still had them. He says: 'What will
you take, Lynch?' I says: 'I want all I can get,' I says:
'You see my work here, it is monthly pay, and a large
family, and I have a son just out of the hospital and
need ready cash.' He changed the subject then and
said: 'Well, our people has said that they would issue
stock in lieu of the old bonds of the Chincoteague Fish
Oil and Guano Company,' he said: 'You accept your
$1,000.00 worth of stock and,' he said: 'And make draft
out on me to the Industrial Trust Company and I will
accept the same, which will be $1,000.00 to you and
will be worth $1,200.00 to me." In addition to the
plaintiff, one other witness testified on his behalf in
which he stated he was present at the conversation
between the plaintiff and defendant, in which he heard
Mr. Highfield say to Lynch that he was going to give

Lynch stock, or was going to take the stock, and that he felt that Mr. Lynch would be a valuable man and valuable assets to the company; that he was not interested in it but merely overheard it. Mr. Lynch also testified on cross examination that before the 20th of July he had not finally made up his mind to exchange the bond for the stock.

Mr. Highfield, in his testimony on his own behalf as defendant, denied making any suggestion or arrangement with Lynch or promise to him that he would buy the stock after he, Lynch, should have exchanged his bond for stock. Both parties testified at some length as to all the circumstances surrounding the transaction out of which Lynch alleged that the agreement arose. Mr. Highfield's account of his interview with Mr. Lynch is as follows: "Gentlemen, on or about July 20, 1923, while en route to the factory at Assateague, Mr. Lynch met me at Franklin City, and, as I recall, this is .verbatim his conversation: 'Mr. Highfield, I don't care to take a loss on my bonds, the court allowing some five hundred and some dollars, and I prefer or would prefer to accept stock as I have advised that I would do—what is your opinion of the stock?' I told him that in my mind the stock, each $1,000.00 worth of stock, had back of it the physical value of $1,200.00. That figure is arrived at by the division of 2,720 shares of stock of the company into the established or agreed valuation by the directors that the plant and steamers were worth, $350,000.00. That being so, the relative or physical value as against the stock was as $1,200.00 is to $1,000.00. At that time I did not state, I did not imply, a desire or intention to acquire his stock. His bonds had been offered to me previously for $800.00; they were not acceptable to me then at that figure and his stock was not acceptable at $1,000.00 had I wanted

it, by reason of the fact that for each $1,000.00 of bonds issued by the old company the new company allowed in stock one and one-half times that amount of the bond and matured coupon with assessment paid."

At the end of the testimony, the plaintiff offered the following instruction which was refused: "The court instructs the jury that if they believe from the evidence that the plaintiff, on July 20, 1923, agreed to sell to the defendant, ten (10) shares of stock in the Assateague Fish Oil and Guano Company, as soon as the plaintiff received a certificate for said ten (10) shares, at the aggregate price of one thousand dollars ($1,000.00), and if they believe from the evidence that said defendant on said date agreed to accept said ten (10) shares of stock and to pay therefor upon receipt of said certificate said sum of one thousand dollars ($1,000.00), then it is the duty of said jury to find for the plaintiff."

The defendant offered the following two instructions which were granted:

"The court instructs the jury that if they believe from the evidence that J. R. Lynch, the plaintiff in this case, determined to and did actually accept the stock offered in the new company for bonds in the old company, before July 20, 1923, then any promise or assurance made to the said plaintiff by the said defendant regarding the acceptance by said plaintiff of the stock is without consideration and void."

"The court instructs the jury that if they believe from the evidence that William J. Highfield promised J. R. Lynch that if he, Lynch, would accept the stock of the Assateague Fish Oil and Fertilizer Company, in lieu of a cash settlement for his bonds, he, Highfield, would dispose of said stock as soon as the salesman began selling the stock, and allow him, Lynch, par for same, still, if they further believe from the evidence that said

stock was not salable and the salesman did not make sale of the stock, then they cannot find for the plaintiff in this case."

The above mentioned two instructions being the only instructions given by the court to the jury, the case was argued, and the jury brought in their verdict for the defendant.

The plaintiff assigned as error the refusal of the court to give the instruction offered by him and the granting of the two instructions given as offered by the defendant.

It appears that a corporation under the style of Chincoteague Fish Oil and Guano Company had been doing business in the county of Accomac, and in the year 1922 had gone into the hands of a receiver, and in the course of the suit for that purpose, its assets had been sold in the spring of 1923. Quite a large issue of bonds had been made by this company and before the sale of the assets took place, all of the bonds had been deposited with a bondholders protective committee of which Mr. Highfield, the defendant, was chairman, except bonds to the amount of $10,500. The plaintiff, Lynch, was the holder of a bond for $1,000.00, which had not been deposited with the committee. This bondholders protective committee bought in the assets of the insolvent corporation at a price which would have enabled the bondholders to receive about fifty per cent for their bonds in the final settlement of the affairs of the insolvent corporation. The bondholders protective committee, after purchasing the assets of the insolvent corporation, proceeded to reorganize a new corporation under the style of Assateague Fish Oil and Fertilizer Company, of which Mr. Highfield became president. Mr. Doughty, an attorney in Accomac county, was counsel for the bondholders committee

and for the newly reorganized corporation, and Mr. G. Walter Mapp was advisor and counsel for the holders of the $10,500.00 of bonds which had not been deposited with the committee.    Under date of June 30, 1923, Mr. Doughty, on behalf of his clients, wrote to Mr. Mapp a letter in which he stated that Mr. Mapp's clients might accept for each $1,000.00 bond seventy-five per cent in stock of the new company, or they could take the ascertained value of the bonds from the proceeds of the sale of the assets of the insolvent corporation, which would pay in the neighborhood of fifty per cent in cash. On July 5th, Mr. Lynch, to whom this proposition had been forwarded by Mr. Mapp, wrote the letter that he preferred to take the seventy-five per cent common stock in the new corporation for his $1,000.00 bond, and he thought from Mr. Doughty's letter that the factory would pay under the present arrangement. The testimony does not clearly disclose whether or not this acceptance on the part of Mr. Lynch was communicated to Mr. Doughty.    However, the evidence shows distinctly that on July 12th a meeting was held in Accomac county at which Mr. Doughty, Mr. Highfield, and one or two others interested in the new company met Mr. Mapp, and that after consideration of the whole situation, the proposition was made to Mr. Mapp that his clients, the nonparticipating bondholders, might receive one hundred per cent in the new stock for their bonds, or the cash settlement of about fifty per cent.    Mr. Highfield testified that he understood that Mr. Mapp communicated during that day with all of his clients and reported back that they all agreed to accept the proposition of an even exchange of the bonds for stock in the new company.    The letters put in evidence seem to show that this was a mistake, as Mr. Mapp wrote to Mr. Highfield on July 14th with

reference to the bond held by Dr. Holland, one of his clients, and added that he had written to the other bondholders on the date above and he would advise Mr. Highfield of their decision as promptly as he heard from them. On July 17th, Mr. Highfield wrote Mr. Mapp as follows: "Am in receipt of your letter of the 14th inst. advising that Dr. Holland has concluded to take the cash distribution on his bond rather than take stock in the new company. This is quite agreeable to us, and ask that you kindly arrange to complete matter accordingly. We understand you will favor us with definite advices as to the decision of the other bondholders for which accept our thanks." On July 24th, Mr. Mapp wrote to Mr. Highfield that he had just that morning heard from the last of his clients, and that all of them had elected to take the cash distribution on their bonds, except J. R. Lynch, who would take his in stock pursuant to the agreement. On July 25th, Mr. Highfield, in replying to Mr. Mapp's letter of the day before, withdrew on the part of the new company the offer to issue stock to the nondepositing bondholders altogether. He says: "I note that the nondepositing bondholders have elected to take the cash distribution on their bonds, excepting Mr. J. R. Lynch. This condition prompts our directors to withdraw their offer to all nondepositing bondholders, and we have therefore this day requested the receiver to make cash distribution on account of these bonds, he having the funds in his hands to do so. I very much regret that in this instance we do not feel in a position to make exception in Mr. Lynch's case." Subsequently, on July 28th, Mr. Highfield wrote to Mr. Mapp that they had consented to make an exception in Mr. Lynch's case in order to facilitate matters and would issue him the stock in the amount of $1,000.00 for the $1,000.00 bond.

This stock was issued during the following month and sent to Mr. Lynch and he thereupon drew a draft upon Mr. Highfield for $1,000.00 with the stock attached, which draft Mr. Highfield refused to honor.

[1, 2] The evidence in the case does not justify the first instruction given by the court, which tells the jury that there was no consideration for the contract sued upon if the plaintiff had determined to and did accept the stock in the new company before the 20th of July, 1923, the date of the alleged agreement that Mr. Highfield would purchase the stock. The plaintiff in the case had testified to an actual offer made to him by the defendant, whereby the defendant was to purchase the stock in the new company upon the specified terms as soon as it came into the possession of the plaintiff, in the event the plaintiff accepted the proposition of the exchange of the bonds for the stock. He testified also that he obtained the stock before the offer was withdrawn and it is insisted that the offer and acceptance constituted a contract between the parties. In argument it is insisted by counsel for the defendant that the letter of July 5th, written by Lynch to Mr. Mapp, was a final acceptance of the proposition to take the stock for the bond, and therefore Lynch having so agreed nothing could have acted upon his mind subsequently as an inducement to the agreement. The entire argument here is based upon this letter of July 5th. It seems very plain from the testimony that at the meeting on July 12th it was understood on both sides that no arrangement had been made by or on behalf of the nonparticipating bondholders up to that time. It fairly appears from the testimony that on the 20th of July the whole matter was still in abeyance, *i. e.*, it was not finally determined what any of the nonparticipating bondholders would do in pursuance of the con-

ference which their counsel had with Mr. Highfield and the others on July 12th. We do not think that the decision in the case should be made to turn upon the mere fact as to what extent, if any, Lynch was induced by other considerations to take the stock rather than the alleged offer by Mr. Highfield, and we are, therefore, of opinion that the learned trial court erred in granting the first instruction given to the jury. It is fundamental that an offer to give a certain price for personal property, and left open for acceptance, becomes a contract binding upon the offerer, although no obligation exists to perform the conditions of the offer and to accept. No concluding agreement arises until the terms of the offer are complied with and the offer is accepted. When the terms of the offer are complied with and acceptance made, then a contract ensues resting upon a consideration sufficient to make the promise of the offerer enforceable. *Richmond Eng. Corp.* v. *Loth*, 135 Va. 110, 115 S. E. 774, at pp. 151-154.

[3, 4] It is contended on behalf of the defendant that the instruction offered for the plaintiff and refused is not justified under the pleadings. It is true that the special count in the declaration alleges that the plaintiff was persuaded by the defendant to accept the stock in lieu of the bond by reason of his promising to take the stock and pay $1,000.00 for it. The declaration does not allege that he would not have accepted the stock except for the inducement offered by Mr. Highfield and that by Mr. Highfield's representations the plaintiff had been induced to accept the stock to his injury and so had been damaged. On the contrary the action is in assumpsit and, fairly construed, the declaration should be taken to set up a contract resulting from a conditional offer and acceptance, whereby the defendant agreed to buy the stock as soon as it was

issued and delivered to the plaintiff. Such a contract was valid and enforceable and rested upon sufficient consideration, as already shown. This is the entire theory of the declaration as it proceeds to state that the plaintiff complied with his part of the agreement by tendering the stock in the manner agreed upon; and in stating the breach upon which the claim for damages is based, the declaration states that the defendant "did not accept said stock, and pay said draft, at said time when he was requested as aforesaid, or at any time before or afterwards would he accept the said ten shares of stock of the Assateague Fish Oil and Fertilizer Company, Inc., and pay therefor." This is plainly an action for damages for breach of a contract of sale, and seems to have been so treated in the evidence. As the title to the stock never passed to the defendant, alleged to be the purchaser, the damages to the plaintiff would be the difference between the contract price and the value of the stock at the time the defendant refused to accept and pay for it.

So far as the inducement to take the stock is concerned, whatever may have been the situation on July 20th, Mr. Highfield, who was chairman of the committee of bondholders and also president of the new corporation, and was in control of the negotiations between the new corporation and the nonparticipating bondholders, must have been aware of the situation, and must have known to what extent on July 20th Lynch had bound himself to take the stock. In the letter written by Mr. Highfield on July 25th, he presumes that the directors of the new company were merely negotiating with the bondholders represented by Mr. Mapp, and hence he withdraws altogether the offer to "all nondepositing bondholders" after being informed that Mr. Lynch was the only one desiring the stock.

[5] Under all the circumstances disclosed in the evidence, it seems to us that the inducement which was made the real issue tried before the lower court is immaterial and therefore the case should be sent for a new trial. However induced, Lynch had a right to rely upon the offer. If Mr. Highfield made the agreement to purchase the stock, whether or not it was altogether upon his advice that Lynch determined to take the stock instead of cash, this was only one of the circumstances surrounding and leading to the contract of sale alleged to have been made, if Lynch *relied upon* the original offer in taking the stock. The instruction as offered, however, was objectionable, in that it did not conform to the character of agreement of purchase alleged in the declaration and endeavored to be supported by proof, and the learned trial judge did not err in rejecting it. An instruction properly submitting the plaintiff's case to the jury should have told them that if they believed from the evidence that on July 20th the defendant promised the plaintiff he would take the stock from him, and pay him therefor the amount alleged, in the event plaintiff exchanged his bond for the stock, and the plaintiff, in reliance upon that promise, exchanged his bond for the stock and tendered the stock to the defendant in accordance with the terms of the offer or promise of the defendant, before Highfield's offer or promise was withdrawn, then a contract between the parties resulted, by which Highfield was obligated to accept and pay for the stock, and upon his refusal to do so he became liable to the plaintiff; and concluding with the proper measure of damages.

[6] The defendant was entitled to an instruction submitting to the jury the phase of the case presented in the second instruction given by the court. That instruction, however, as given, was not justified by the

evidence.    Mr. Highfield denied that he had made the
agreement to purchase the stock, and he testified as to
what he did say to Lynch as follows:    "I made him no
offer for the stock; I did say, however, that I would be
glad to render every assistance to Mr. Lynch in the
disposition of his stock.    I did state that we were em-
ploying a salesman to sell the stock and that if he was
successful in making disposition of our outstanding
stock I would be happy to have him dispose of Mr.
Lynch's stock."    The defendant was entitled to an
instruction to the effect that if the jury believed from
the evidence he made no offer to purchase the stock,
but only stated he would assist in its disposition for
Mr. Lynch, and the latter had made no request of him
to dispose of the stock, the jury should find for the
defendant.    There is no testimony upon which to base
the statement that as a part of any promise to dispose
of the stock Highfield would "allow him, Lynch, par
for the same," as stated in the instruction.

[7] For these reasons the case will be reversed and
remanded for a new trial.    The evidence seems to show
very little reason why Mr. Highfield should have made
such a contract as that upon which the suit was brought,
but there is distinct testimony on the part of the plain-
tiff that such an agreement was made and that question
is entirely for the jury.

*Reversed.*